**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jorge Garibaldi, | No. CV-19-02558-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Everest National Insurance Company, et al., | |
| Defendants. | |

Before the Court is Everest National Insurance Company's ("Everest") motion for summary judgment, which is fully briefed. (Docs. 87, 97, 100.) For the following reasons, the Court will deny Everest's motion.[1]

**I. Background**

On November 22, 2017, Jorge Garibaldi was injured on the job while employed with Valley Fire and Water Restoration, Inc., ("Valley Fire"), which insured its workers through Everest. (Doc. 1-3 at 5.) Plaintiff filed a workers' compensation claim. The Industrial Commission of Arizona ("ICA") sent notice to Everest and a third-party administrator—York Risk Services Group—on December 14, 2017. (Doc. 97-1 at 125.) Everest's adjuster, American Claims Management ("ACM"), did not issue a Notice of

---

[1] Everest's request for oral argument is denied because the issues are adequately briefed and oral argument will not help the Court resolve the motion. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f)*; Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991). In addition, Everest's request that the Court strike Mr. Garibaldi's response due to his use of a font in footnotes that is smaller than instructed by the local rules is denied.

1    Claim Status within the 21-day statutory period, and ICA sent Everest a Notice of Violation
2    on February 6, 2018.  (*Id.* at 128.)

3         On February 14, 2018, Everest and ACM assigned the claim to an ACM claims
4    handler, Perla Salcido.   (Doc. 97-2 at 84.)  Ms. Salcido accepted the claim as a no-time
5    loss case on February 16, 2018.  (Doc. 97-1 at 130.)  She also arranged for treatment by
6    Dr. Jeffrey Scott, a physician suggested by Mr. Garibaldi's attorney.  (Doc. 87-1 at 72-73.)
7    Dr. Scott opined that Mr. Garibaldi suffered from lumbar strain, disc protrusion, and
8    radiculopathy, recommended a lumbar MRI and steroid injections, and took him off work
9    on March 28, 2018.  Dr. Scott's report was received by Ms. Salcido on April 4, 2018.
10   However, she did not amend the initial notice of claim status to make clear that this claim
11   was not, in fact, a no-time loss claim, or issue payment. (Doc. 97-1 at 136.)   Instead, Ms.
12   Salcido rejected Dr. Scott's report and refused to pay the disability benefits.  (*Id.* at 75.)

13        On April 23, 2018, ACM set up an Independent Medical Examination ("IME") with
14   Dr. Leon Ensalada, which took place on May 17, 2018.  (*Id.*)  Dr. Ensalada's IME report
15   concluded that Mr. Garibaldi had no current diagnosis which related to the November 22,
16   2017 industrial injury, Plaintiff could work, and his current condition was a result of
17   Bertolotti's syndrome.  (Doc. 87-1 at 81-91.)  Relying on the IME report, ACM denied the
18   claim on June 14, 2018—in effect, rescinding the initial acceptance—and issued a notice
19   of claim status on July 30, 2018 noting a July 9, 2018 closure date.  (Doc. 1-3 at 18; Doc.
20   97-1 at 45, 76, 159, 168.)  Nevertheless, temporary compensation benefits were paid in
21   August 2018, retroactive and current through the July 9, 2018 closure date.  (Doc. 97-1 at
22   133.)

23         On February 7, 2019, the ICA overturned Everest's denial.  (Doc. 87-2 at 2-6.)  The
24   claim closed effective April 25, 2019 due to settlement of the underlying ICA case.  (Doc.
25   87-2 at 14-16.)  However, in settlement, Mr. Garibaldi reserved the right to maintain an
26   independent action for bad faith. On March 20, 2019, Mr. Garibaldi filed suit against
27   Everest in Maricopa County Superior Court, which Everest removed to this Court on April
28   19, 2019.  (Doc. 1.)  Mr. Garibaldi's operative complaint alleges that Everest failed to

1  conduct a reasonable and prompt investigation of his claim, brings a claim for insurance

2  bad faith against it, and seeks punitive damages.  (Doc. 1-3.)  On October 30, 2020, Everest

3  filed its motion for summary judgment, which seeks summary judgment in its entirety, or

4  in the alternative—should Mr. Garibaldi's bad faith claim survive—a finding that he is not

5  entitled to punitive damages as a matter of law.   (Doc. 87.)  Everest's motion is now ripe.

6  **II.  Discussion**

7      **A.  Bad Faith Claim**

8        In addressing a bad faith claim, the proper inquiry is whether there is sufficient

9  evidence from which reasonable jurors could conclude that in the investigation, evaluation,

10  and processing of the plaintiff's claim, the insuring defendant (1) acted unreasonably (2)

11  either knew of or acted with reckless disregard of the lack of reasonable basis for its actions,

12  and (3) caused the plaintiff damages.  *Noble v. Nat'l Am. Life Ins. Co.*, 624 P.2d 866, 868

13  (Ariz. 1981); *Merkens v. Fed. Ins. Co.*, 349 P.3d 1111, 1114-15 (Ariz. Ct. App. 2015).  Mr.

14  Garibaldi has presented sufficient evidence to meet each prong at this juncture.

15        First, Mr. Garibaldi has presented sufficient evidence from which a reasonable jury

16  could conclude that Everest acted unreasonably in the investigation, evaluation and

17  processing of this claim.  A worker's compensation insurer may not use the IME process

18  as a tool to limit liability,[2] manufacture a reason to deny a claim or otherwise make a

19  claimant jump through unnecessary procedural hoops.  *Demetrulias v. Wal-Mart Stores*,

20  917 F. Supp. 2d 993, 1007 (D. Ariz. 2013); *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995

21  P.2d 276, 280 (Ariz. 2000).  However, Mr. Garibaldi has introduced evidence from which

22  a reasonable jury could conclude that Everest unreasonably and improperly used the IME

23  process to "doctor shop" and limit and cut off benefits after July 2018.   Specifically, Ms.

24  Salcido admittedly rejected Dr. Scott's opinion, without any medical report, knowledge, or

25  evidence to support such rejection, and sought out an IME from a reputably conservative

26        [2] Mr. Garibaldi has also introduced evidence supporting other theories that Everest
27  acted unreasonably, such as Everest's failure to promptly pay benefits from November
2017 through July 2018.  However, for purposes of this order, the Court focuses on the
28  allegation of abuse of the IME process as a single example demonstrating that Mr.
Garibaldi has created a genuine dispute of material fact as to whether Everest acted
unreasonably.

1    and insurer-favoring examiner, Dr. Ensalada, without first investigating Dr. Scott's

2    education, background, and experience or seeking to contact Dr. Scott for clarification on

3    his report.  (Doc. 87-1 at 15-18.)

4         Second, Mr. Garibaldi has presented sufficient evidence from which a reasonable

5    jury could conclude that Everest knew of or acted with reckless disregard of the lack of

6    reasonable basis for rejecting Dr. Scott's opinion and adopting the opinion of Dr. Ensalada,

7    an examiner with a pro-insurer bias known to Everest.[3]   In the following exchanges during

8    her deposition, Ms. Salcido provided evidence from which a reasonable jury could

9    conclude that she intentionally or recklessly "doctor shopped" in order to manufacture a

10   reason to deny benefits.

11        Q.  (BY MR. DENNIS) Is there anything that Dr. Scott could
          have told you, whether it be in his medical reports, verbally, or
12        otherwise in response to a letter or e-mail that would have
          convinced you [to] pay the benefits that are owed to Mr.
13        Garibaldi?

14        . . .

15        THE WITNESS:  No I needed a second opinion.

16        Q. (BY MR. DENNIS) In other words, no matter what he said,
          you wanted to proceed with the IME to decide the benefits that
17        you would pay.

18        . . .

19        THE WITNESS:   They hold more weight than a treating
          physician.
20

21   (Doc. 87-1 at 19.)

22        [3] When soliciting an examiner, Ms. Salcido explicitly sought assurance from
23   Everest's IME vendor that the proposed examiner was pro-insurer, and informed a
     coworker, "EE will be set up with Dr. Leon Ensalda . . . Cody assured me Dr. Ensalada is
24   a very conservative doctor." (Doc. 97-1 at 99.)  Dr. Scott also noted in his deposition that
25   Dr. Ensalada had a reputation in the medical community for providing opinions to
     insurance companies that justified the denial of claims, explaining, "when I see his name,
26   I—I know . . . I need to prepare to go to war for my patient" and "[w]e're going to have to
27   go to the Commission and fight for the care that I think he needs.  That's just been my
     experience with him.  I've had hearings on many cases with him." (Doc. 97-2 at 41-42.)
28

1

2

Q.  But there wasn't another medical doctor that you relied upon to dispute Dr. Scott's report, was there?

3

A.  That's why I sought out the IME.

4

(Doc. 97-2 at 96.)

5

6

Q: The decision that you made before Dr. Ensalada did the evaluation[,] that his findings would determine what benefits you paid or not, after you got his report, you, in fact, did what you planned; you followed his report and denied all benefits.

7

8

. . .

9

THE WITNESS: Correct. Correct.

10

(Doc. 97-2 at 99-100.)  Looking to this testimony, a reasonably jury might determine that

11

Ms. Salcido either intentionally sought out an IME to deny benefits or harbored a pro-IME

12

bias such that she recklessly disregarded the lack of basis for rejecting Dr. Scott's opinion.

13

Third, Mr. Garibaldi has presented sufficient evidence from which a reasonable jury

14

could conclude that Everest caused Mr. Garibaldi damages.  Particularly, Dr. Scott opined,[4]

15

16

17

18

19

20

21

It is my opinion that the delayed authorization of benefits, including medical benefits, to Mr. Garibaldi was not medically advisable.  There was no reasonable medical basis to deny Mr. Garibaldi's care, given the history of injury, MRI findings, and treatment.  As a result, Mr. Garibaldi was left with ongoing symptoms, such as back pain and radicular leg pain, that more likely than not were avoidable with timely medical treatment . . . Because of the delay in Mr. Garibaldi's medical care, he experienced an unnecessary period of low back pain, radicular pain, and delayed return to work.  Had Mr. Garibaldi been allowed to proceed with his treatment without delay by the workers' compensation carrier, he would have suffered less pain, increased function, and returned to work sooner.

22

23

(Doc. 87-2 at 45.)  In sum, Mr. Garibaldi has created a genuine dispute of material fact on

24

his bad faith claim, which will survive summary judgment.

25

**B.  Punitive Damages**

26

In order to obtain punitive damages, a plaintiff must produce evidence such that a

27

28

_____

[4] Everest argues that Dr. Scott's testimony should be stricken and Mr. Garibaldi should not be allowed to rely on it to defeat summary judgment.  The Court rejects this argument for the reasons described in its August 10, 2021 decision denying Everest's *Daubert* motion to exclude Dr. Scott's testimony.  (Doc. 102.)

- 5 -

1    reasonable jury could find, by clear and convincing evidence, the existence of "(1) evil

2    actions; (2) spiteful motives; or (3) outrageous, oppressive or intolerable conduct that

3    creates substantial risk of tremendous harm to others." *Volz v. Coleman Co., Inc.*, 748 P.2d

4    1191, 1194 (1987).  This District has previously found that using an IME to limit recovery

5    for an injury could support a finding of an "evil hand," which satisfies the first prong.

6    *Demetrulias*, 917 F. Supp. 2d at 1007.  Because Mr. Garibaldi has produced evidence from

7    which a reasonable jury could conclude that Everest sought out an IME in order to

8    manufacture a justification to deny his claim, he may proceed in seeking punitive damages

9    at trial.

10        **IT IS ORDERED** that Everest's motion for summary judgment (Doc. 87) is

11    **DENIED.**

12        Dated this 12th day of August, 2021.

13

14

15

16                     _____

17                     Douglas L. Rayes
                      United States District Judge

18

19

20

21

22

23

24

25

26

27

28